104 F.3d 366
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James A. WILSON, Sr., d/b/a Modern Locker Plant and/or
Cattlemen's Co-op; Yellowstone Meat Co.; Rudolph
G. Stanko a/k/a "Butch Stanko", Petitioners,
v.
UNITED STATES DEPARTMENT OF AGRICULTURE, Respondent.
 No. 95-70403.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 16, 1996.*
Decided Dec. 20, 1996.
 
 On Petition for Review of an Order of the Secretary of the United States Department of Agriculture, FMIA No. 94-6, PPIA No. 94-4;
 USDA
 REVIEW DENIED.
 Before: SNEED, TROTT, and THOMAS, Circuit Judges.
 
 
 1
 James A. Wilson, Sr., d/b/a Modern Locker Plant and/or Cattlemen's Co-op, Yellowstone Meat Company and Rudolph Stanko, all pro se, petition for review of an order of the Secretary of the United States Department of Agriculture ("Secretary") withdrawing Wilson's meat inspection services under the Federal Meat Inspection Act ("FMIA"), 21 U.S.C. §§ 601-680, and Wilson's poultry inspection services under the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §§ 451-470. We have jurisdiction over the portion of the Secretary's order withdrawing poultry inspection services pursuant to 21 U.S.C. § 467(c), and exercise pendent appellate jurisdiction over the portion of the order withdrawing meat inspection services.[1] We deny the petition for review.
 
 
 2
 As an initial matter, Yellowstone Meat Company and Rudolph Stanko are not proper parties to this appeal. Under the FMIA and PPIA, only the recipient of inspection services may file a petition for judicial review of an order withdrawing inspection services. See 21 U.S.C. §§ 467(c), 671. James Wilson, the owner of Modern Locker Plant, was the recipient of the inspection services that were withdrawn in this case and, as such, is the only party authorized by statute to petition for review of the Secretary's order.[2] Accordingly, we address only the issues raised by Wilson.
 
 
 3
 We will uphold the decision of the Secretary unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. See Farley and Calfee, Inc. v. United States Dep't of Agric., 941 F.2d 964, 966 (9th Cir.1991). The findings of the Secretary must be affirmed if supported by substantial evidence in the record. See Spencer Livestock Comm'n Co. v. Department of Agric., 841 F.2d 1451, 1454 (9th Cir.1988).
 
 
 4
 Wilson first contends that the Secretary erred by finding that Rudolph Stanko, a person who has been convicted on two occasions of violating, or conspiring to violate, the FMIA, among other crimes, is "responsibly connected" to Wilson. We disagree.
 
 
 5
 Both the FMIA and PPIA allow for the withdrawal of inspection services when the recipient of inspection services, or anyone "responsibly connected" with the recipient, has been convicted of certain offenses. See 21 U.S.C. §§ 467(a), 671. Under both acts, a person is "responsibly connected" with the recipient if he or she: (1) is a partner, officer, director, holder, or owner of ten percent or more of the business's voting stock; or (2) is an employee in a managerial or executive capacity. See 21 U.S.C. §§ 467(a), 671.
 
 
 6
 Although Wilson maintains that Stanko is merely a "consultant" for Yellowstone Meat Company, a slaughtering and meat packing business that leases Modern Locker Plant from Wilson, substantial evidence supports the Secretary's finding that Stanko is an employee in a managerial or executive capacity at Modern Locker Plant. A review of the record reveals that Stanko hires workers, determines their pay, buys and sells cattle, negotiates agreements, arranges for meat product transportation, sells Modern Locker Plant's meat products, and directs operations at Modern Locker Plant. As stated by the Secretary, these are the actions of a manager, not a consultant.
 
 
 7
 Wilson next contends that the Secretary failed to consider "mitigating circumstances" prior to withdrawing meat inspection services. This argument fails. First, nothing in the FMIA requires the Secretary to consider mitigating circumstances prior to withdrawing meat inspection services. Under 21 U.S.C. § 671, the Secretary may withdraw meat inspection services solely on the basis that a person responsibly connected to the recipient of inspection services has been convicted of a felony. Second, assuming arguendo that the Secretary had an obligation to consider mitigating circumstances, the Secretary did so in this case. The Secretary noted that Yellowstone Meat Company and Stanko have operated Modern Locker Plant in compliance with the agency's inspection standards, but determined that this single mitigating factor did not outweigh "the many negative factors militating against awarding any of the respondents a grant of inspection."
 
 
 8
 Wilson also argues that the FMIA violates the Commerce Clause and the Tenth Amendment to the United States Constitution. However, the validity of the FMIA was upheld by the United States Supreme Court in Pittsburgh Melting Co. v. Totten, 248 U.S. 1, 8 (1918) ("The enactment of the statute was within the power of Congress in order to prevent interstate and foreign shipment of impure or adulterated meat-food products").
 
 
 9
 Wilson's bill of attainder and double jeopardy arguments are without merit. The FMIA does not inflict punishment; it is a remedial statute designed to protect the health and welfare of consumers by assuring that the meat and poultry products distributed to them are wholesome and properly marked, labeled and packaged. See 21 U.S.C. §§ 451, 602. The FMIA's provision barring convicted felons from further responsible connection to recipients of grants of inspection services serves as an important enforcement mechanism. See, e.g., Siegel v. Lyng, 851 F.2d 412, 417-18 (D.C.Cir.1988).
 
 
 10
 PETITION FOR REVIEW DENIED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. See Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, respondent's request for oral argument is denied
 
 
 [1]
 The PPIA permits a recipient of poultry inspection services to file a petition for judicial review of an order of the Secretary withdrawing poultry inspection services with the United States Court of Appeals. See 21 U.S.C. § 467(c). The FMIA, on the other hand, provides that the United States District Courts have jurisdiction over orders of the Secretary withdrawing meat inspection services. See 21 U.S.C. §§ 671, 674. Thus, it would appear that we have jurisdiction over only that portion of the Secretary's order withdrawing poultry inspection services. However, because the withdrawal of both poultry and meat inspection services arises out of a consolidated proceeding before the Secretary, involves a common nucleus of facts, and presents the same issues, we assert pendent jurisdiction over the FMIA claim. See, e.g., Windy City Meat Co. v. United States Dep't of Agric., 926 F.2d 672, 675 n. 3 (7th Cir.1991)
 
 
 [2]
 Yellowstone Meat Company, a slaughtering and meat packing business, leased the slaughtering and meat packing facility owned by Wilson and, according to the Secretary, attempted to use Wilson's grant of inspection services contrary to 9 C.F.R. § 305.1(c) ("When inspection has been granted to any applicant at an establishment, it shall not be granted to any other person at the same establishment") and 9 C.F.R. § 304.1(c) ("Preparation of product and other operations at the establishment for which inspection is granted may be conducted only by the applicant named in the application"). According to the findings of the Secretary, Rudolph Stanko is an employee of Yellowstone Meat Company